## ALEXANDER SAYER *v.* T. W. SAMUEL, ETC.

**Executions—Motion to Quash Not a Bar to a Proceeding in Equity to Enjoin Collection.**

A motion to quash an execution may be made when an execution has been irregularly issued, when it has been issued against the wrong party, or upon a different judgment or upon a defective sale bond or by reason of some other defective proceeding.

A mere motion to quash an execution, the motion having been overruled and nothing else appearing in the record is not such a judgment as will bar a proceeding in equity to enjoin the collection of the executions upon the grounds of payment even if the relief asked for was one of the grounds set forth in the motion to quash.

### APPEAL FROM NELSON CIRCUIT COURT.

January 3, 1872.

OPINION BY JUDGE PRYOR:

In May, 1866, Wheat & Co. had a venditioni exponas issued from the Clerk's office of the Nelson Circuit Court directing the

sheriff of that county to sell certain personal property, and a tract of land, belonging to one J. McDoom and containing about 2,500 acres to satisfy a debt due the plaintiff therein.

At the same time a venditioni exponas also issued in favor of Joseph Hart against the same parties, and was placed in the sheriff's hands for the sale of the same property.

The sheriff proceeded to sell the land and the appellant Sayer became the purchaser for the sum of $500.00, for which amount he executed bond with John G. Samuels, his surety.

The amount of the sale bond was apportioned between the two executions, and these executions afterwards paid off by T. W. Samuels, the sheriff, and endorsed for his benefit. Samuels, in November, 1869, had an execution issued on the sale bond against the appellant Sayer and placed in the hands of the (then) sheriff of Nelson county for collection. After this execution had been issued on the bond, the appellant Sayers, upon notice given to the appellee, moved the Judge of the Nelson Circuit Court to quash the execution, and assigned eight different grounds for sustaining his motion. Among the causes alleged were, that the appellee was not the owner of the bond, and also that the appellant had fully satisfied and paid the same to the appellee. The Court upon the hearing of this motion refused to quash the execution. Appellant then filed his petition in equity, and obtained an injunction enjoining the appellee from proceeding to collect the amount of the bond. The same grounds are relied on for obtaining the injunction that were made by the appellant on his motion to quash the execution.

The appellee answered the petition in which he controverts all the material allegations and insists that the proceeding by motion to quash the execution is a bar to the relief asked for by the appellant in the present action.

A motion to quash an execution may be made when an execution has irregularly issued, as for instance, where it has been issued for or against the wrong party, or upon a different judgment than the one in which the execution issued, or upon a defective sale bond, or by reason of some other defective proceeding. An execution may also be quashed upon proof of payment of the debt, but as a general rule the quashal of an execution presupposes the right of the party entitled to the execution to have it again issued. Whether the question of payment was considered by the Court

upon the motion does **not appear, and we are not dispos**ed to ad-judge that a mere motion to quash an execution, the motion having been overruled and nothing else appearing on the record, is such a judgment as will bar a proceeding in equity enjoining the collection of the execution upon the ground of payment even if the relief asked for was one of the grounds set forth in the motion to quash.

We are also well satisfied that the question of payment connected with the many transactions relating to the partnership between these parties was not investigated upon the motion to quash the execution and if such was even the case the facts in this record establish an indebtedness upon the part of the appellee more than sufficient to discharge the amount of the execution issued against the appellant, and he is therefore entitled to the relief asked for if the allegations of his petition are sustained by the proof.

When appellant purchased the land for which the bond was given, it was sold subject to a lien of near $2,000.00, held on the same, in favor of a man by the name of W. H. Doom. The land was afterwards sold to satisfy this lien as well as the lien acquired by the appellant under his purchase. It seem that the appellant and one W. I. Samuels were the ostensible purchasers of the land under this sale. W. I. Samuels was a son of the appellee, and as the appellee was the commissioner who sold the land, it was thought proper that the title should be vested in the son, so as not to invalidate the sale. This land had valuable timber on it, and of a character that suited the partnership business of the appellant and the appellee. The appellant and the appellee from the last purchase, took possession of it, and used it, the appellee assuming as much control over it as the appellant. The land was given in to the assessor of taxable property, as the land of Samuels and Sayers, and when a compromise was effected between the two, the appellant took the land, the appellee was assigned his part of the staves, ties and other timber cut upon it. There is no doubt but that the land was the partnership land of Samuels and Sayers and the name of the son was used in the purchase merely to hold the title for the father. In 1866 the appellee paid off the execution, by which, as he alleges, the appellant became indebted to him in the amount of the sale bond. He never attempted to coerce this bond or its amount, until the two became hostile to each other some

two or three years after, and then had his execution issued. The appellant shortly before and after the execution of the bond, had either loaned or paid to appellee various sums of money amounting in the aggregate to about twenty-five hundred dollars. The partnership then existed between them. The land for which this bond was given had again been sold and purchased for the benefit of the firm, and thereby converted into partnership property. The parties had used it as such, and never would have regarded the land in any other light but for the unfortunate difficulty that originated between them.

After they had divided their partnership, and a settlement had, at the instance of mutual friends, and each one required to make a statement of his demands against the other, no mention whatever was made of the amount of this bond. The result of this settlement shows the appellee indebted to appellant in a sum exceeding two thousand dollars. This was in 1869, nearly three years after the appellee had paid off the executions and become entitled to the proceeds of the sale bond. The appellee paid over in money on this settlement to the appellant nearly twenty-one hundred dollars, and what he lacked of money, required his relative to execute to the appellant his note for. Now, if the appellee held this claim against the appellant, in a condition where an execution could be issued for the money, and an objection as available to him as the bank bills he was paying out, why did he not present it, in part payment of his indebtedness on the settlement? The only satisfactory answer that can be given, is that it had become a part of the partnership liabilities, and in the transaction between the parties touching the partnership, and the payment of monies to the appellee it had been fully accounted for. It is true that the written evidence of the matters embraced in the settlement between the parties made in 1869 says, "that this settlement is not intended to nor does it include any matters between said Samuels and Sayers, growing out of or pertaining to any suits or judgments, or executions in the Nelson Circuit Court. Said matters are not affected by this settlement in any wise. Matters which rest upon judgment of court or are in court for adjudication are excepted, but all others are settled by the terms of this paper."

The proof in regard to this writing is, that the appellant had two suits pending in court, against the appellee, and that these

suits were excepted from the settlement. This exception was talked of by all who attempted to aid in the settlement; they all knew what exceptions were made, and at no time was this five hundred dollar sale bond ever mentioned. An opportunity was offered the appellee when the settlement was made to insist upon his right to the amount of the bond, but it seems to have faded from his recollection entirely, and he now claims that the exception in the settlement itself shows that the bond was not included in the settlement. The friends of the parties were endeavoring to settle all the differences between them, and if you apply it to the partnership alone, then this whole land and its purchase formed a part of the partnership accounts and was embraced by it. The appellee acquired a right to this sale bond in 1866, he afterwards purchased through his son one-half of the land. The land when purchased belonged to him and the appellant. The appellant shortly before and after the purchase in 1866 let the appellee have sums of money, amounting to $2,500.00. No claim is set up for this sale bond or its amount for near three years, a settlement is had between the two after the lapse of three years and the appellee pays to the appellant near two thousand dollars in money, and has a note executed to him for the balance of his indebtedness and all this time he insists that his sale bond with interest from 1866 was due and owing him.

We are satisfied that the amount of the sale bond was accounted for by the appellant, and if the written evidence of settlement is to be construed as contended for by appellee, the proof introduced shows clearly that its terms embraced more than was intended or agreed upon by the parties. The question as to what the writing does embrace is altogether immaterial however, for the reason that the claim of appellee is satisfied.

Wherefore, the judgment of the court below is reversed and the cause remanded with directions to the court below to make the injunction perpetual and for further proceedings not inconsistent with this opinion.

*Muir & Wickliffe and Bullock, for appellant.*

*Johnson, for appellees.*